

# THE ATTORNEY GENERAL
## OF TEXAS

**GROVER SELLERS**
~~JOHN CHILDRESS~~PPERD
**ATTORNEY GENERAL**

**AUSTIN 11, TEXAS**

Honorable Raymond F. Blount, Secretary
Anatomical Board of the State of Texas
University of Texas
Galveston, Texas

Dear Sir:

Opinion No. 0-6455
Re: Disposition of bodies of deceased persons-"bona fide friend"-transportation of such bodies.

In your letter of recent date you ask our opinion on several distinct questions affecting dead human bodies, which we restate as follows:

(1) Under the language of Article 4584, Revised Civil Statutes of Texas, which contains the statutory regulations relating to the delivery of bodies to the Anatomical Board, it is provided that human bodies required to be buried at public expense may be turned over to the Board under certain circumstances, after notice to "kindred or relatives of such deceased." It is further provided that "if any person claiming to be and satisfying the authorities in charge of such body that he or she is of a kindred or is related by marriage to the deceased, or is a <u>bona fide friend or representative of an organization</u> of which the deceased was a member, shall claim the said body for burial, it shall be surrendered without cost to such claimant for interment, or shall upon such claimant's request, be interred in the manner provided for the interment of bodies not coming within the operation of the law." Under this law, can the Anatomical Board require the signature of bona fide friends and representatives of organizations or other proof in substantiation of their position as such "bona fide friends" or "representatives of organizations?"

(2) Under the above cited statutes and those providing for burial at public expense, would a county or city be authorized or permitted to require persons claiming bodies for burial at public expense to be either kindred or related by marriage, before releasing such bodies for such burial?

(3)  Article 4586 provides that the board may employ public carriers for the conveyance of said bodies.

(a) Are we correct in interpreting the law to mean that the Anatomical Board may make use of public carrier, such as a trucking company, and that the shipment need not be done through an undertaker?

(b) When a body is shipped from one city to another by ordinary methods the Express Company charges the undertaker twice first class railway fare for the distance shipped, rather than the ordinary express rates by weight.  Does the law require that we pay this or may we ask that we be charged by weight?

(c)  This problem also arises with the exchange of anatomical specimens (parts of bodies between institutions.  Can we legally have this material properly boxed and shipped by truck?

It is the function of the Anatomical Board of the State of Texas to receive dead human bodies required to be buried at public expense and to distribute such bodies to certain institutions for use in the advancement and promotion of learning in the medical sciences.  The powers and duties of the Board are provided by Chapter 13, Title 71, Revised Civil Statutes of Texas, Articles 4583 to 4590.

Article 4583 specifies those to hold membership on said Board.  In the language of the statute:

"* * * The board shall have power to establish rules and regulations for its government, and to appoint and remove proper officers of such board and shall keep full and complete minutes of its transactions.  Records sufficient for identification shall also be kept, under its direction, of all bodies received and distributed by said board and of persons to whom the same may be distributed, which minutes and records shall be open at all times to the inspection of each member of said board and of any district attorney or county attorney of this State."
(Emphasis ours)

Article 4584 reads as follows:

"All public officers, agents, and servants
and all officers, agents and servants of any county,
city, town, district or other municipality, and of
any and every almshouse, prison, morgue, hospital,
or any other public institution, having charge or
control of dead human bodies required to be buried
at public expense are hereby required, after noti-
fication in writing by said board or its duly author-
ized officers, or persons designated by the author-
ities of said board, then and thereafter to announce
to said board, its authorized officer or agent, when-
ever such body or bodies come into his or their posses-
sion, charge or control, and shall without fee or re-
ward greater than the value of such fee as was paid
in any county, city, town, or municipality on the
third day of April 1907, for the burial of pauper
bodies, deliver such body or bodies, and permit the
said board and its agents and the physicians and
surgeons, from time to time designated by them who
may comply with the provisions of this law, to take
and remove all such bodies as are not desired for
post mortem examination by the medical staff of public
hospitals or institutions for the insane to be used
within this State for the advancement of medical
science, but no notice need be given, nor any such
body be delivered, if any person claiming to be and
satisfying the authorities in charge of such body
that he or she is of kindred or is related by marriage
to the deceased, or is a bona fide friend or repre-
sentative of an organization of which the deceased
was a member, shall claim the said body for burial,
but it shall be surrendered without cost to such
claimant for interment, or shall upon such claimant's
request, be interred in the manner provided for the
interment of bodies not coming within the operation
of this law.  No notice shall be given for the body
to be delivered, if the deceased died of contagious
disease, save tuberculosis, or syphilis, nor shall
notice be given if such deceased person were a
traveler who died suddenly, in which cases the body
shall be buried.  It is further required that due
effort be made by those in charge of such almshouse,
prison, morgue, hospital, or other public institution
having charge or control of such dead human bodies,
to find kindred or relatives of such deceased and
notify him or her of the death; and failure to claim
such body by kindred or relation within twenty-four
hours after receipt of such notification shall be
recognized as bringing such body under the provisions
of this law, and delivery shall be made as soon there-

after to said board, its officers, or agents as may
be possible. Such person in charge of such public
institution shall file with the county judge  an
affidavit that he has made diligent inquiry to find
the kindred or relatives of the deceased stating
such inquiry as he has made.  In case a body is
claimed  by relatives within ten days after it has
been delivered to an institution or persons  en-
titled to them for burial and without costs."

From a careful reading of the above statute, it is
our opinion  that the holder of such a body as is contemplated
(one required to be buried at public expense, save and except
that of a person who died of contagious disease, save tubercu-
losis, or syphilis, or a traveler who died suddenly), is legally
bound to notify or "announce to" the board immediately upon
acquiring the body, that fact.  This, of course, is only appli-
cable to those who have been notified in writing by the board
or its officers or persons designated by the authorities of the
board.  Upon such notice or announcement, the board assumes
potential jurisdiction of the body.  It is further the duty of
the person or persons having possession of the body to make
diligent effort to locate "kindred or relatives" (relatives by
marriage) of the deceased and to make known the death.  After
such actual notice, such kindred or relation has twenty-four
hours within which to claim the body, before the board may assume
possession and manual control of it.  If no such claim be made
within such time (twenty-four hours after notice to such kindred
or relation), the board by complying with the statute (paying
the holder of the body such reward or fee as was paid for the
burial of pauper bodies in the county, city, town, or municipal-
ity concerned on April 3, 1907), may assume actual physical pos-
session of the body and distribute it as provided by Article
4585.  Relatives may still claim and receive the body within
ten days after delivery to any institution or person by the
board.

However, the above statute provides, "no notice need
be given" (to kindred or relatives of such deceased) "nor any
such body be delivered" (to the board or its representatives)
"if any person claiming to be and satisfying the authorities
in charge of such body that he or she is of a kindred or is re-
lated by marriage to the deceased, or is a bona fide friend or
representative of an organization of which the deceased was a
member, shall claim the said body for burial, but it shall be
surrendered without cost to such claimant for interment, or shall
upon such claimant's request, be interred in the manner provided
for the interment of bodies not coming within the operation of
this law."

We are of the opinion that the above language simply means that if kindred or relatives by marriage to the deceased, or a "bona fide friend", or representative of any organization of which deceased was a member, claims the body, it shall be surrendered without cost to the claimant for burial, or interred at public cost.

What is a "bona fide friend" of the deceased?  There appears to be no hidden meaning or mystery in the phrase. Webster defines "friend" as "one who entertains for another such sentiments of esteem, respect, and affection that he seeks his society and welfare; a well-wisher; an intimate associate." By "bona fide" is meant "in or with good faith; without fraud or deceit; genuine."  So a "bona fide friend" as used in this statute clearly implies one genuinely interested in the welfare of the deceased.

As Article 4583, supra, defining the scope of the duties of the board specifically provides that "the board shall have power to establish rules and regulations for its government" and as the board has potential jurisdiction of the body at once "whenever such body or bodies come into his or their possession" (of the hospital or other enumerated institution named in Article 4584, supra), it is our opinion that your board has the authority to promulgate a rule and thereby to set up reasonable standards by which to require proof or substantiation of the claimed status of "bona fide friend" or "representative of an organization of which the deceased was a member." We deem it appropriate that actual notice of such requirement be given the institutions called upon in the "notification in writing by said board" contemplated and required by the first sentence of said article 4584, supra.  This answers your first question.

In considering your second question, we find the provisions of Article 2351, Revised Civil Statutes, to specify as one of the duties of commissioners' courts, that such courts shall "provide for the burial of paupers."  It has been held that a county is not liable for burial expenses of a pauper without proper authority being obtained through notice to the county judge or commissioners, and their approval thereof, prior to burial.  McNorton v. Val Verde County (Tex. Civ. App.) 25 S.W. 653.  The statutes do not specify what requirements shall be imposed by the county.  Other than the cited article and article 4584, supra, we find no legislation on the subject.  It is our opinion, however, that the commissioners' court would not be justified in ignoring the language of Article 4584 which says the body "shall upon such claimant's request (kindred, relative by marriage, bona fide friend or representative, etc.), be interred in the manner provided", etc.

Article 1015, Revised Civil Statutes, sub-division 13 provides that the governing body of a city shall have power to "regulate the burial of the dead." It is assumed that city ordinances properly enacted, would control; and such ordinances would prescribe the regulations on the subject. It would seem to be incompatible with the language quoted in the next preceding paragraph, however, for the city to impose the condition you mention, and require kindred or relatives by marriage to be the ones making the request for burial, in view of the statute also including "bona fide friends or representatives of an organization" as coming within the category of those entitled to make such request. Ordinances of cities must conform to state laws; certainly must not conflict with their provisions.

You are accordingly advised, in answer to your second question, that in our opinion neither counties nor cities may require persons claiming bodies for burial at public expense to be either kindred or related by marriage to the deceased pauper or indigent dead.

We next consider your questions with relation to the transportation of said bodies.

Article 4586, Revised Civil Statutes, reads as follows:

"The board may employ public carriers for the conveyance of said bodies, which shall be carefully deposited, with the least possible public display. The sender shall keep on permanent file a description by name, color, sex, age, place and cause of death of each body transmitted by him. Or where the body shall be one of a person unknown, the color, age, sex, place and supposed cause of death; and any other data available for identification, such as scars, deformities, etc., shall be put on record. A duplicate of this description shall be mailed, or otherwise safely conveyed, to the person or institution to whom the body is being sent; and the person or institution receiving such body shall, without delay, safely transmit to the sender a receipt for the same in the full terms of the description furnished by the sender. All these records shall be filed in a manner to be determined by the board so that they may be at any time available for inspection by the board, or any district or county attorney of this State."

The term "public carrier" as used in the above statute, or otherwise, does not appear to have been judicially defined by our Texas courts. In other jurisdictions there have been such

definitions.  In the case of Ace-High Dresses v. J.C. Trucking Company, 191 A. 536, 538, 122 Conn. 578, 112 A.L.R. 86, it is held that one who undertakes as a business, for hire or reward, to carry from one place to another goods of all persons who may apply for such carriage, provided goods be of the kind which he professes to carry, and person so applying will agree to have them carried on lawful terms prescribed by carrier, is a "public carrier."  In State ex rel. Anderson v. Witthous, 102 S.W. (2d) 99, 102, 340 Mo. 1004, the test of a "public carrier" is said to be whether the operator invites trade of the public.  See 35 Words and Phrases, Perm. Ed., 55, 56 for other examples.  For the purposes of this opinion, we adopt the above definitions.

The statutory provisions of our Code with relation to the transportation of dead bodies generally are contained in Rules 77-86 of the Sanitary Code, same being a part of Aritcle 4477, Revised Civil Statutes.  It is our opinion that Article 4586 must be interpreted in connection with said Rules.  For an example, Rule 77 states that bodies dead of certain specified pestilential diseases may not be transported except in a hearse or undertaker's wagon unless the body shall have been cremated.  We do not think Article 4586 would authorize transportation of such corpses by public carrier.  Other regulations are set forth dealing with methods of preparing for shipment of contagious disease cases, etc., which we do not believe it necessary to detail here.

Article 4586 was originally enacted in 1907; Article 4477 in 1911, amended by addition of some matter in 1917.  Article 4586 must be read and construed in connection with the requirements of Rules 77 to 86 of Article 4477.

Unless coming within some prohibition of Rules 77 to 86 of Article 4477, it is our opinion that the proper answer to question 3(a), supra, is that the Anatomical Board may make use of a public carrier, such as a trucking company, and that the shipment need not be done through an undertaker.

You state that you have been shipping some bodies by express and that the Express Company charges the undertaker twice first class railway fare; you wish to know whether the law requires that you pay such rates, or whether you may pay the Express Company by weight only.

Item 18, page 45, Official Express Classification No. 33 (July 1, 1943, as amended July 10, 1943), and approved by the Railroad Commission of Texas by schedule order No. 128, as to express companies provides:

"When weight does not exceed 500 pounds, corpses

must be charged double the one-way adult passenger fare based on ticket good for transportation in parlor or standard sleeping cars as named in the tariff or tariffs of the railroad over whose lines the corpse is transported as lawfully on file with the Interstate Commerce Commission, the * * * Railroad Commission with which this classification is filed, minimum charge $6.75."

The Railroad Commission has made no exception applicable to your board, according to the Rate Division of such Commission. That body is vested by law with the rate making power, and your organization is bound thereby.

You are therefore advised that 3(b), supra, is answered that when shipping bodies by express, you must pay twice first-class railway fare for the distance shipped, minimum $6.75, until and unless the rates are revised or the law is changed.

The Rate Division of the Railroad Commission advises that there is no special tariff affecting the anatomical specimens of which you inquire in question 3(c). According to their information such specimens would come under unspecified shipments and would take first-class express charges by weight.

If properly boxed, we are not apprised of any law which would preclude your shipping such specimens by truck.

Trusting that the above will adequately answer your questions, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Benjamin Woodall
Benjamin Woodall
Assistant

BW:zd:wc

APPROVED MAR 31, 1945
s/Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman